John C. Clune
Lauren E. Groth
HUTCHINSON, BLACK, AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
clune@hbcboulder.com
groth@hbcboulder.com

Peter Michael Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, MT 59624-1241
(406) 442-8670
mike@meloylawfirm.com
        *Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| T.C., G.C., and JANE DOE | ) |
| Plaintiffs, | ) **Case No. CV 9:17-cv-00176-DWM** |
| vs. | ) **FIRST AMENDED COMPLAINT** |
| | ) **AND DEMAND FOR JURY** |
| | ) **TRIAL** |
| FRENCHTOWN SCHOOL DISTRICT and RANDY CLINE, in his individual capacity | ) |
| Defendants. | ) |

T.C., G.C., and Jane Doe ("Ms. Doe") (collectively "Plaintiffs") for their First Amended

Complaint against Defendants, Frenchtown School District and Randy Cline (collectively "Defendants"), state as follows:

<u>PARTIES, JURISDICTION AND VENUE</u>

1.      Ms. Doe is a Montana resident who lives in Mineral County. During the 2016-2017 academic year, Doe was a student enrolled at Frenchtown High School in the Frenchtown School District.

2.      T.C. and G.C. are the parents of Ms. Doe.  They are Montana residents currently living in Mineral County.

3.      Defendant Frenchtown School District ("FSD") is a Montana public school district. FSD receives both state and federal funding and is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

4.      Upon information and belief, Defendant Randy Cline ("Superintendent Cline") is a Montana resident.  During the 2016-2017, and 2017-2018 academic years, Superintendent Cline was employed by FSD as Superintendent of the school district.

5.      This Court has jurisdiction over this action under 28 U.S.C. §1331 and 28 U.S.C. §1367.

6.      Venue is proper in this Court under 28 U.S.C. §1391(b)(1) and (2).

<u>GENERAL ALLEGATIONS</u>

<u>Summary of Claims</u>

7.      On several occasions beginning in 2014, defendants FSD and Superintendent Cline received reports from parents and students of disturbing conduct by Troy Bashor, a music and theater teacher at Frenchtown School District, including reports that Mr. Bashor was engaging in inappropriate touching and harassing behaviors with female students at the school and other

conduct that indicated a clear lack of appropriate boundaries with female students. Although FSD employees were subject to mandatory reporting obligations under Montana law, they chose to ignore the reports of Mr. Bashor's predatory behavior and failed to take any measures to protect female students at Frenchtown High School from harm.

8.     As a direct result of these failures, Bashor sexually harassed and assaulted Doe.

9.     Beginning in January 2017, shortly after Doe disclosed Bashor's conduct to her parents, the Missoula County Sheriff's Office conducted a criminal investigation. As a result of that investigation, the Missoula County Sheriff's office charged Mr. Bashor with sexual assault.

10.     In light of the specific, detailed and repeated reports given to FSD administrators, including Superintendent Cline, FSD had actual notice of Mr. Bashor's severe and pervasive sexual harassment of students at Frenchtown High School for two years before Doe was sexually harassed and assaulted.

11.     At no time after those reports did FSD administrators take any official action against Mr. Bashor prior to his sexual assault of Doe, although they had the responsibility and authority as his supervisors and FSD administrators to take such action.

12.     FSD further failed to take any action to address the hostile educational environment that Doe experienced after she reported Mr. Bashor's misconduct, including harassment, bullying, and threats by other Frenchtown students and staff loyal to Mr. Bashor. The bullying and retaliation that Doe experienced between January and May 2016 forced Doe to leave Frenchtown School District and has resulted in ongoing mental and emotional distress.

### Sex Offender Grooming Behaviors

13.     According to countless publications and online resources addressing child sexual abuse, "grooming" is a process that sexual predators use to gain the trust and confidence of children

and to "prepare" a child for sexual misconduct. Sexual predators frequently target vulnerable students for grooming and look to those who may be dealing with stressful environments at home, lack self-confidence, are new to the environment, or are isolated from their peers. After a vulnerable student is selected, the predator typically engages in increasingly inappropriate boundary violations including spending excess time with the student, engaging with them in activities typically reserved for minors (such as online games), discussing matters typically reserved for adults, telling private or secret information, and inviting the student to spend time with them outside of the normal teacher-student relationship.

14.     Eventually, in a grooming relationship, the offender progresses to physical boundary violations, including blurring the line between inappropriate and appropriate touching. This can include playing physical games with the student, teasing them with physical conduct, massages, and other physical activities. These physical boundary violations act to confuse the student's normal response to unwanted physical contact and become the offender's gateway to inappropriate sexual conduct.

15.     Finally, when a predator is grooming a student, he will typically act to isolate the student, providing increasing opportunities to interact one-on-one. This may include offers to privately coach or tutor the student, to provide them with transportation to and from events, and to have them act as a personal assistant or student aide in the classroom environment.

### Frenchtown School District's Notice of Bashor's Previous Grooming and Harassment of Another Female Student

16.     Mr. Bashor is a music and theater teacher at Frenchtown High School and Frenchtown Junior High School, which are adjoined buildings that share a common campus. Since 2014, multiple female students, including Doe, have reported uncomfortable and harassing

behaviors by Mr. Bashor, including inappropriate and unwanted touching of students, inappropriate hugging, and inappropriate discussions of sexual and reproductive topics.

17.     In the fall of 2014, a female student identified herein as "Student A," arrived at Frenchtown Junior High School as a seventh grader. Her father had just passed away, a fact her mother had disclosed to the school so her teachers and staff could help make the transition easier and support her through this difficult time.   Student A was placed into a seventh grade choir class with Mr. Bashor and, almost immediately, he began to shower her with physical attention and inappropriate comments. Mr. Bashor would frequently touch Student A in inappropriate places such as her bare legs or belly button, gradually becoming more invasive as time went on. He also hugged her repeatedly, moving from side hugs, to full body frontal hugs.

18.     In December 2014, Student A approached her mother and asked whether it was normal for a teacher to touch her in this fashion. Student A explained to her mother what Mr. Bashor was doing and her mother immediately called Frenchtown High School and spoke with a school counselor. Shortly thereafter, Superintendent Cline returned the call and Student A's mother expressed her concern and frustration over Mr. Bashor's actions. She explained that Mr. Bashor's behaviors towards Student A were not normal and asked that Mr. Bashor's actions toward her daughter immediately be addressed. In response, Superintendent Cline said that he would talk with Mr. Bashor about this behavior. Neither Superintendent Cline nor FSD took any further action on the matter.

19.     For a brief period after this report, Mr. Bashor stopped touching Student A. In spring 2015, however, toward the end of Student A's seventh grade year, the grooming began again, including touching her inappropriately, repeatedly hugging her firmly and generally invading normal physical boundaries. Mr. Bashor would continue to come up to Student A and

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 5

hug her tightly. Occasionally, he would have her jump straight up in the air and catch her with his arms underneath hers while he spun her around.

20.     On another occasion in 2016, Student A was at the school coffee shop before class when Mr. Bashor came up to her and asked her "is this your belly button?" He then proceeded to poke and rub her stomach. He continued to rub on her stomach until she became uncomfortable and asked him to stop.

21.     In a similar incident, Student A hurt her back while in cheerleading practice. Mr. Bashor offered to pop her back, but Student A declined. Mr. Bashor then offered to rub her back instead. He proceeded to rub up and down Student A's back, including rubbing all the way down to her buttocks. Student A became so uncomfortable that she got up from the room and left.

22.     These types of inappropriate interactions continued throughout Student A's eighth grade and ninth grade years.

23.     Although Mr. Bashor's actions made Student A so uncomfortable that she began actively avoiding him, Student A was hesitant to bring up her concerns with her classmates or school officials. Mr. Bashor was a much beloved teacher at Frenchtown, with many students involved in his choir, theater, and music programs, as well as helping out in the coffee shop he started at the school. Student A knew that many of her classmates related to Mr. Bashor more as their friend than a teacher, and would be upset and angry if they found out that Student A had gotten him in trouble.

24.      Eventually, Student A became so anxious and upset about seeing Mr. Bashor at school that she told several of her friends that Mr. Bashor's touching made her uncomfortable. Her friends immediately reported Mr. Bashor's conduct to Frenchtown High School's speech and debate teacher, Mr. Hutchinson, in December 2016. This report raised concern for Mr. Hutchinson

who was aware that Mr. Bashor had previously been disciplined for inappropriately touching students. Mr. Hutchinson spoke directly with Mr. Bashor about these concerns.

25.     Instead of refraining from any further inappropriate contact with Student A, Mr. Bashor started texting Student A and asking to speak in private with him.  Student A ignored his texts, stayed out of his class and tried to avoid him as much as possible.

26.     On January 11, 2017, Student A again reported Mr. Bashor's touching to her English teacher, Mr. Coie. At the time they were reading a book about a woman who was raped over the summer. Student A approached Mr. Coie after class with a friend and told Mr. Coie that Mr. Bashor had been "handsy" with her. She told Mr. Coie that she felt uncomfortable because of Mr. Bashor's actions and that she was scared to walk down the hallways at school for possibility of running into him. When Mr. Coie asked her what made her uncomfortable, she disclosed that Mr. Bashor would grab her butt and run his fingers down her spine to the tip of her buttocks.

27.     On or about January 12, 2017, Mr. Coie reported Student A's concerns to Principal Haynes and told him that he needed to speak with Mr. Bashor immediately. Principal Haynes did not report what Mr. Coie had told him to police and did nothing further with this information until contacted by police regarding Doe's assault.

28.     Mr. Coie, Mr. Hutchinson, and Mr. Haynes are all mandatory reporters under Montana law.

### "Everyone's Favorite Teacher" –Begins Grooming Jane Doe

29.     In the summer of 2015, Doe moved from Oregon to Frenchtown, Montana. She started school at Frenchtown High School in the fall of 2015. On her first day at Frenchtown, Doe's counselor put her in a musical theater class. She told Doe that everyone liked Mr. Bashor and it would be a good class for a new student.

30.     When Doe arrived to the class, Mr. Bashor introduced himself. He invited her to have lunch with him and a group of students that he regularly ate with, but Doe decided to eat in the lunch room instead.

31.     At the next musical theater class, Mr. Bashor approached Doe and again offered for her to join him during lunch. By the second week, Doe finally agreed and began joining Mr. Bashor for lunch.

32.     Over time, Mr. Bashor began crossing boundaries with Doe and would disclose intimate details of his life with her, stating that his marriage was struggling because his wife could not conceive a child.

33.     Mr. Bashor also began frequently texting Doe on her personal phone and, upon information and belief, did so with other female students as well.  Mr. Bashor would frequently play games with Doe through their smart phones and "friended" her on Facebook and Instagram.

34.     As Doe's first year at Frenchtown High School progressed, Mr. Bashor also became increasingly physically "touchy" with Doe. He began hugging her frequently and rubbing her back and shoulders when he saw her.

35.     Doe found this type of attention odd and confusing and began to ask other students about it.  Her classmates dismissed the behavior stating that Mr. Bashor was just a friendly teacher. Doe soon learned that Mr. Bashor was considered to be "touchy" by other students at Frenchtown High School and was known to hold girls' hands, put his arms around them, and otherwise engage in close and inappropriate personal contact.

36.     At the end of Doe's sophomore year at Frenchtown, Mr. Bashor asked Doe to be his teacher's aide, which would require a lot more one on one interaction between Mr Bashor and Doe. He explained that he needed her help in running the coffee shop and middle school programs

that he participated in. While Doe was uncertain about becoming an aide, Mr. Bashor continued to try to persuade her, even going so far as filling out the paperwork and handing her the form to turn in.

37.     At the same time, Mr. Bashor also encouraged Doe to join his choir group, even though Doe was not interested in being a choir member.  When he discovered that choir was full for the fall 2016 semester, he encouraged Doe to join his percussion class instead and wait until a choir spot opened up.  When Doe resisted and stated that she does not read music or play an instrument, Mr. Bashor told her he would give her lessons after school.  Despite Doe's repeated reluctance to join a class that she had neither any interest nor skill in, Mr. Bashor continued to pressure Doe to join the class.

38.     Doe refused to sign up for the percussion class.  Yet when she started back to school in fall 2016, Bashor's percussion class was on her class schedule.

39.     As an aide for Mr. Bashor, and now a member of the percussion class, Doe was required to spend a significant amount of time with Mr. Bashor.  Mr. Bashor continued to erode appropriate teacher student boundaries by routinely confiding in her about how strained his marriage was becoming and the distress he was in due to his desire to have children. At the same time, Mr. Bashor began complimenting Doe regularly in class about her physical appearance.

40.     On one occasion during her sophomore year, Doe was on her period and needed to use the bathroom to change her tampon. Mr. Bashor asked her to tell him what the issue was and when she did, he offered her Ibuprofen and told her that he was experienced with feminine issues and happy to talk with her about them more if needed. Mr. Bashor also let her know that he kept extra pads and other feminine products in his office and that she was free to come to his office and use them as needed.

41.     Mr. Bashor's attention to Doe's period and female cycles became more disturbing as the year continued. At times, he would randomly ask her if she was on her period, or ask her why she was going to the bathroom. On one occasion, she acknowledged that she was on her period and he wanted to discuss with her what types of birth control help alleviate cramps during menstruation. These discussions made Doe extremely uncomfortable.

42.     At one point when Mr. Bashor raised his wife's inability to have a child, Mr. Bashor stated to Doe that her period cramps would go away if she got pregnant, but that she shouldn't let her boyfriend get her pregnant.

43.     On another occasion, Mr. Bashor asked Doe how her cramps were doing and motioned toward her lower stomach. He then offered to "massage" her cramps to make them go away but she refused.

44.     In addition to his developing preoccupation with Doe's menstruation cycle and apparent fertility, Mr. Bashor also was gradually increasing his physical contact with Doe. Mr. Bashor would regularly ask Doe to stand in front of his computer and proofread his emails before he sent them. On multiple occasions, Mr. Bashor would grab Doe's waist while she was reading emails and pull her toward him.  At other times Mr. Bashor would stand next to her and touch her buttocks, putting his hands on her lower back and the upper part of her buttocks.  When Doe attempted to refuse his gestures or step away to break the physical contact, Mr. Bashor would abandon the physical contact and go back to work as though nothing had happened.

45.     On one occasion, Doe was proof-reading an email when Mr. Bashor was seated on the desk chair and pulled Doe onto his lap. Doe immediately got up off his lap and Mr. Bashor commented "yeah, my wife will be here soon anyways and I'm sure she wouldn't like that."

46.     On another occasion during the fall semester, Doe was discussing with Mr. Bashor about what she wanted to do as a profession after she graduated. Doe told Mr. Bashor that she was interested in being a massage therapist. Mr. Bashor told her that he had taken massage therapy classes in college and offered to show her his specific techniques. Doe declined.

47.     Mr. Bashor's inappropriate touching and offers of touching also happened outside of the classroom. During a separate occasion toward the end of the fall semester in 2016, Doe was working at the coffee shop on Frenchtown High School's campus when Mr. Bashor came up beside her and placed his hand on her mid-back and then moved it slowly down to her buttocks. Doe pulled away and tried to maneuver her way around the counter so that she could continue working but Mr. Bashor followed her and tried to hug her. Doe then left the coffee shop entirely and went into the percussion room, which was next to the coffee shop. Mr. Bashor again followed her into the percussion room. Doe stayed in the percussion room for a few minutes, hoping Mr. Bashor would go away. Instead, he approached her again and began rubbing her back. At this point, Doe left and went to the school counselor's office. She told them she just needed a minute and they let her stay there until she was ready to return to class.    After this incident, Doe decided that she needed to change her schedule to get out of any classes that she had with Mr. Bashor.

## Mr. Bashor Sexually Assaults Doe

48.     On December 20, 2016, Doe was at the Frenchtown High School auditorium helping to take down the set from a play.

49.     As Doe was going to a school dance the next day, she was showing a picture of her dress to Student B, another aide who was also helping to take down the set. Mr. Bashor heard this conversation and stated that he wanted to see the picture of Doe in the dress that she had on her phone.  Upon viewing the photo, Mr. Bashor told Doe that he could "kind of see" her underwear

underneath the dress and suggested she wear something underneath so that she wouldn't make her boyfriend feel uncomfortable. Mr. Bashor's remark made Doe uncomfortable as her underwear could not be seen and his comment indicated continued sexual attention.

50.     Doe resumed hanging up the curtains on the set and Student B left the auditorium. As she did so, Mr. Bashor came up behind her and put his hand on her buttocks. Doe tried to ignore him and moved away from him to the other side of the curtain. Mr. Bashor followed her. Doe began trying to break up the wooden set so that she could take it outside but Mr. Bashor continued to follow her.  He then tried to hug Doe.

51.     Doe felt very uncomfortable at this point and decided to leave the set entirely. As she turned to walk away, Mr. Bashor grabbed Doe's arms and flung them over his shoulders so that they were facing each other, their faces only inches apart. Doe dropped her arms back down to her sides.  As she did so, Mr. Bashor moved his hands up and under her sweatshirt, near her breasts. Doe was completely overwhelmed and froze in panic before finally pulling away.

52.     Mr. Bashor grabbed Doe a second time and tried to hug her again. As he was holding her, Mr. Bashor leaned in with his eyes closed and his head tilted, and tried to kiss Doe on the mouth.

53.     Doe immediately jumped back before Mr. Bashor's mouth touched hers. This caused Mr. Bashor to step back as well, and as he did he commented "Oh, that was awkward." A few second later, Student B, came back into the auditorium and Doe used it as an opportunity to quickly leave the room. She felt shaken by the encounter, uncomfortable and unsafe. Doe hid in the bathroom for approximately an hour and a half.  Finally, she worked up the courage to go back to study hall class for the last ten minutes of the day.  After the class was over, she hid from Mr. Bashor in the cafeteria until her ride showed up.

54.     Following this incident, Doe did her best to avoid Mr. Bashor at school. After the holiday break, Doe stayed out of his classroom for a few weeks using excuses such as having tests that she needed to make up. In common spaces at the school Doe tried to stay with other friends so that she would not have to face Mr. Bashor alone. Still, Doe would also run into him in the hallway, where he would try to come up to her and put a hand on her shoulder.

55.     As Doe continued to avoid Mr. Bashor at Frenchtown High School, he increasingly tried to find her. He called Doe, texted her, and asked her if she was still at school. He would come by her locker and ask her what was going on, and try to talk to her in hallways and at lunch.

56.     These encounters frequently made Doe overwhelmed, panicked, and repulsed. She could no longer look Mr. Bashor in the eye and frequently avoided him when she saw him around the school.

57.     Doe's boyfriend, Student C, noticed that Doe was acting oddly and seemed shaken and upset. He asked her what was wrong and told her he was worried about her.  Doe then told him what had happened and Student C encouraged her to tell her parents.

58.     Despite Student C's urgings, Doe initially refused to tell her parents about Mr. Bashor's behavior in the auditorium.  Doe was afraid that if she told her parents, and they told the school, no one would believe her.  Mr. Bashor was everyone's favorite teacher and Doe was afraid she would be harassed by the students at school who liked Mr. Bashor.

59.     As a result of keeping this to herself, Doe became moody and distant, and pushed her parents away. Over time, Doe's parents noticed a dramatic change in their daughter's demeanor and began to ask questions.

60.     In mid-January 2017, Doe finally admitted to her parents what had happened. One evening, Doe's mother took away her phone until she agreed to talk about what was going on.  Doe

told her mother that Mr. Bashor had been touching her for a while, including on her buttocks outside of her clothes. She further told her mom that one day he had gone above and beyond that, but did not describe further.  Doe's mother was shocked and told Doe that she would contact Principal Haynes the next morning to immediately set up a meeting to discuss what was going on.

61.     The next day, Doe had a panic attack at school after running into Mr. Bashor and was taken to a school counselor, Bridget Rowe. The school counselor mentioned to Doe that she had been coming in to see Ms. Rowe fairly often, and asked Doe if something was wrong. Doe reported that something had happened with a boy teacher. The counselor told Doe that she needed to speak with her boss to figure out what to do about this information. Doe explained that her mom knew and was planning to contact Principal Haynes to set up a meeting. The school counselor said she understood, but needed to talk to her boss. Doe went back to class and awaited word from the school counselor. Eventually the school counselor called for her and explained that they needed to go talk with Principal Haynes. They went down to Principal Haynes' office and spoke briefly with him and Assistant Principal Lewis. After getting some basic information about what had happened, Principal Haynes said he didn't want to talk to Doe anymore until she had a parent involved.

## **"I saw all the signs and failed to respond"**

62.     Principal Haynes then contacted Doe's mother and set up a time for Doe and her family to come in to discuss the matter. At this meeting, Doe described what Mr. Bashor had been doing. Principal Haynes responded by dropping his head and telling Doe and her mother that he had "seen all the signs" but "failed to respond."  Principal Haynes listened to Doe's story in full detail and appeared disgusted to learn what Mr. Bashor had done.  He told the family that he would do his best to make sure this was fully addressed.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 14

63.     At the same time that Principal Haynes was dealing with the report from Doe and counselor Rowe, the Missoula County Sheriff's Office ("MCSO") was informed of possible child abuse involving Troy Bashor by a psychiatrist, Aubrei Cloud, through the Missoula child abuse hotline.  According to Ms. Cloud, her client, a 14 to 16 year old girl, told Ms. Cloud that she had a friend at Frenchtown High School that Mr. Bashor had inappropriately touched and tried to kiss. Lieutenant Robert Kennedy of the MCSO immediately contacted Principal Haynes and told Principal Haynes that MCSO was aware of allegations against Mr. Bashor.

### FSD Finds Just Cause to Suspend Mr. Bashor

64.     On January 13, 2017, in response to the allegations and report from MSCO, Principal Haynes placed Mr. Bashor on administrative leave with pay, pending an investigation.

65.     Lieutenant Kennedy also opened an investigation into the matter and requested to be kept apprised of any further interviews that Principal Haynes conducted or any updates in the school's investigation.

66.     The same day, Superintendent Cline provided Doe's mother and Doe with a letter acknowledging receipt of their complaint of inappropriate conduct against Mr. Bashor. The letter acknowledged that the allegations constituted sex discrimination under Title IX and indicated that FSD would conduct an investigation.

67.     Over the following two weeks, Doe was asked to provide her story repeatedly to Principal Haynes and Vice Principal Lewis. Both officials told her that throughout the repeated recitations, Doe's story had not changed or waivered and they were convinced that the assault had happened. Throughout the interviews, Principal Haynes and Vice Principal Lewis made clear to her that they believed her.

68.     After these initial interviews with Principal Haynes, Lieutenant Kennedy instructed Doe's mother and Doe to refrain from meeting with the school again or discussing the matter further. He told them that he would share his notes and video from the criminal investigation with the school. When Principal Haynes requested additional meetings with Doe, Doe's mother informed him of Lieutenant Kennedy's instructions, including that he would give the school a copy of the transcription of Doe's criminal interview.

69.     On January 27, 2017, only two weeks after opening an investigation into Mr. Bashor's behavior, FSD issued a "Documentation of Just Cause of Suspension" to Mr. Bashor, finding that he had "shown poor judgment in maintaining professional boundaries between himself and some of his students," and required him to serve two days of suspension without pay on January 26, 2017 and January 27, 2017.

70.      Upon serving his suspension, FSD permitted Mr. Bashor to immediately return to school, without notifying Doe of his return and without any limitation on his contact with Doe. As Doe was overwhelmed with fear and anxiety upon learning of Mr. Bashor's return without restriction, her parents decided to seek a restraining order against Mr. Bashor to prevent him from approaching or touching her while at school. Doe stayed out of school while she awaited the restraining order.

71.     On February 24, 2017, Doe received a temporary order of protection from Missoula Justice of the Peace Landee Holloway which forbade Mr. Bashor from entering Frenchtown High School.

72.     On March 14, 2017, following an evidentiary hearing on the matter,  Justice Holloway found that sufficient cause existed to permanently restrain Mr. Bashor and ordered that he remain fifteen feet away from Doe at Frenchtown High School and 1500 feet away from Doe

at all other locations. In granting the order, Justice Holloway found that based on the evidence presented at the hearing Doe was in danger of harm by Mr. Bashor.

73.     At the hearing, many of Doe's classmates, and their parents, showed up in support of Mr. Bashor, and several students even testified on his behalf.

74.     Three days after the judge's order, Doe's mother and Doe received a new letter from Superintendent Cline indicating that FSD had "conducted an investigation into these allegations," and that FSD determined that "Mr. Bashor did violate boundaries with your daughter," but FSD "could not substantiate allegations of inappropriate sexual contact." Accordingly, FSD held that Mr. Bashor's two days of paid suspension was sufficient punishment but directed him not have contact with Doe, the same condition as in the restraining order. The letter further indicated that Doe should inform Superintendent Cline and the District immediately if any person retaliated against Doe so that they could take proper action, a promise they repeatedly failed to uphold.

### FSD's Deliberate Indifference to Retaliation Against Doe

75.     Following Doe's report to FSD that Mr. Bashor had assaulted her, Doe began to experience significant ongoing harassment from Mr. Bashor as well as some of his other students. Despite repeated efforts by Doe to bring this harassment to the attention of FSD officials, little if anything was done to help Doe.

76.      In the weeks and months following her report of sexual assault, Doe was exposed to extensive bullying, threats of violence, intimidation in the classroom, and ostracization. Although Doe and her mother reported the bullying and threats on an almost daily basis, neither Frenchtown administrators nor teachers made any meaningful attempt to stop it.

77.     The verbal harassment and threats that Doe experienced were ongoing and

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 17

psychologically damaging. Doe was told to "go kill herself" by several students. In February and March 2017, students would make vomiting noises at Doe in the halls in order to make fun of Doe's testimony during restraining order proceedings that Mr. Bashor made her "nauseous." She was also called "liar," "lying bitch," "slut" and accused of just reporting Mr. Bashor in order to "get attention." A group of seniors at Frenchtown High School frequently told Doe that they were going to "kick her scrawny ass."

78.     Often this verbal harassment would occur in front of Frenchtown High School teachers. For example, on March 23, 2017, Doe was in a creative writing class with two students who began talking about Doe's restraining order against Mr. Bashor. The two students had accused Doe of "faking" everything. They pulled up articles about the restraining order on their computers and began harassing Doe.  Doe reported it to her teacher, Mrs. Mazzola, who told them to close the websites and separated them. The students continued to glare at her in that period, and continued to harass her the next day.

79.     In late March 2017, Doe received a text from a friend telling her that everyone in study hall was talking about her and called Doe a lying bitch and a whore. The study hall teacher, Ms. Phippin, joined in the hazing telling the students that Doe was just trying to get attention.

80.     The harassment escalated from verbal to physical in nature. On March 20, 2017, another Frenchtown student, Student D, painfully shoulder checked Doe in the hallway.  Doe immediately reported it to Principle Haynes, but he told her that the school security cameras were not working so he could not do anything. Principal Haynes never mentioned speaking with Student D about these incidents.  When Student D shoulder checked Doe again several days later, Principal Haynes checked the security cameras and told Doe that it looked merely accidental.

81.     The students also isolated Doe in her classrooms. This included moving all of their

desks away from hers so that she would be left sitting alone in the classroom as though she was contagious. This occurred in several classes including Algebra II, study hall, and English. Despite witnessing this happening, none of Doe's teachers responded or addressed the issue.

82.     Doe was also harassed on social media. Students would repeatedly attempt to friend her on platforms such as Instagram and Facebook, and send her threatening social media messages. After Doe's claims against Mr. Bashor were initially reported by the Missoula media, fellow students outed her real name online and in news comments, while attacking her character. One adult volunteer at the school, Kailey Hood, publicly commented that she doubted Doe's credibility and called her a "major drama queen and attention seeker." Despite efforts by Doe's mother to bring this to Principal Haynes attention, he offered only to speak with the students, and did not discipline them, despite the clear retaliation. The harassment predictably continued.

83.     Doe further faced retaliation from teachers and administrators at her own school, many of whom were very vocal in their support for Mr. Bashor, including circulating emails suggesting that they "stood with Bashor," loved Mr. Bashor and that the Missoulian had engaged in "biased and false" reporting. Even Principal Haynes, the administrator charged with ensuring Doe's educational environment was free from hostility and retaliation freely shared emails encouraging others to come out to support Mr. Bashor and denounce the Missoulian's "false" reporting.

84.     Despite the fact that Doe, her parents, and her friends repeatedly reported this bullying, harassment, and retaliation to Principal Haynes, little was done to stop it.

85.     Rather than address the hostile environment at Frenchtown High School, Principal Haynes's only solution was to isolate Doe. When Doe would report bullying or harassment, Principal Haynes would have Doe sit in a room by herself across from his office, or go stay with

the school counselors, in order to avoid being bullied by fellow students. This forced Doe to miss class and further isolated her from her peers. In so doing, Principal Haynes further cemented the message that she was the problem at FSD.

86.     When Doe pressed further about what could be done to stop the bullying, Doe was told that Principal Haynes had talked to parents about it, but that he could not tell her more because of confidentiality. He also told Doe there was nothing he could do to stop students from harassing her on social media.

87.     Doe also experienced ongoing harassment from Mr. Bashor.  Mr. Bashor began frequently hanging out near her classrooms. The frequency of Bashor's presence near her classrooms was not normal.  For example, on March 20, 2017, Mr. Bashor stood outside the child development class, which was near Doe's locker and on the other side of the school from Bashor's classroom, and glared at her as she passed. On other occasions, Doe would notice Mr. Bashor staring at her from across the room at school assemblies.  Doe felt intimidated and eventually stopped attending these assemblies.

88.     Doe reported Mr. Bashor's behavior to Principal Haynes, but Haynes told Doe that it was not the school's job to enforce the restraining order.

### Superintendent Cline Attacks Doe's Credibility in the Missoulian

89.     On March 22, 2017, Superintendent Cline took it upon himself to write an op-ed with the *Missoulian* newspaper detailing the nature of Doe's and Student A's allegations and defending FSD's decision not to further discipline Mr. Bashor. Claiming the need to clear up some issues he saw on social media, Superintendent Cline misrepresented the school's investigation and publicly attacked Doe's credibility, suggesting that there was a "significant discrepancy in the information that the student [Doe] provided to the school." Superintendent Cline then went on to

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 20

suggest that Doe refused to participate in any further investigation with FSD, a statement that is also patently false.

90.     The op-ed further disclosed details of FSD's Title IX investigation into Mr. Bashor, including their findings on Doe's allegations.

91.     The information disclosed by Superintendent Cline in this opinion piece constituted private educational records of Student A and Doe, which were illegally disclosed by Superintendent Cline to the public without Student A and Doe's permission, in violation of the Federal Educational Rights and Privacy Act.

92.     In further violation of the federal statute, Superintendent Cline provided the *Missoulian* with copies of the actual student records.

93.     Once Superintendent Cline's guest column ran in the *Missoulian*, Doe and her family began receiving increased harassment from individuals who were now citing to the column as the proof that she is a liar.

94.     As a result of Superintendent Cline's actions, Doe felt increasingly unsafe both at home and in her community and her other family members began to experience threats of violence as well.  While driving through Frenchtown, people would yell at them or drive by and flip them off. Individuals would drive by their home and yell obscenities or "liar" and say they needed to leave town.

95.     As a result of the increasing and overwhelming hostile retaliation from the students, teachers, and Superintendent Cline, Doe was forced to leave Frenchtown High School and she and her family have moved from Frenchtown, Montana.

96.     This ongoing bullying, intimidation, and harassment, as well as the constant threat of running into Mr. Bashor at school, took a significant mental toll on Doe including anxiety,

isolation, feelings of depression and even thoughts of suicide.

**First Claim for Relief**
**Violation of Title IX (20 U.S.C. § 1681(a))**
**Indifference to Substantial Risk of Harm**
**(Defendant FSD)**

97.     Doe re-alleges each and every allegation set forth in paragraphs 1 through 95 as though fully set forth herein.

98.     Beginning in 2014, FSD had actual knowledge of a substantial risk of harm to female students at Frenchtown High School based on reports by Student A and her mother of severe and pervasive sexual harassment by Mr. Bashor.

99.     FSD acted with deliberate indifference to these reports when it failed to conduct an investigation into the reports of harassment by Mr. Bashor, or otherwise address Mr. Bashor's inappropriate behaviors. This failure to take any action, despite FSD's authority to do so, was clearly unreasonable in light of known circumstances.

100.     As a direct and proximate result of FSD's failure to respond to reports of harassment by Mr. Bashor, Doe was subjected to sexual harassment and assault by Mr. Bashor in 2016.

101.     Doe was subjected to physical sexual harassment, sexual assault and sexual discrimination that were so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits, including being subjected to a hostile educational environment and forced to leave Frenchtown High School entirely.

102.     In addition, Doe has suffered and continues to suffer from considerable anxiety and emotional distress regarding her experience, safety and well-being.

103.     Doe has suffered these and other damages as a result of FSD's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as set forth above.

**Second Claim for Relief**
**Violation of Title IX (20 U.S.C. § 1681(a))**
**Deliberate Indifference to a Hostile Educational Environment**
**(Defendant FSD)**

104.    Doe re-alleges each and every allegation set forth in paragraphs 1 through 102 as though fully set forth herein.

105.    Following Doe's report of sexual assault, FSD had actual knowledge that Jane Doe was suffering in a hostile educational environment due to repeated reports of severe and pervasive ongoing harassment, retaliation and discrimination by students and teachers at Frenchtown High School, including Superintendent Cline's own efforts to attack and discredit Doe in the media.

106.    FSD acted with deliberate indifference to these reports of harassment, retaliation, and discrimination when it failed to address these reports, remedy Superintendent Cline's conduct, discipline students engaging in retaliation against Doe, or otherwise take measures to ensure a safe educational environment for Doe.  FSD's failure to take any action to stop this harassment and retaliation, despite its authority to do so, was clearly unreasonable in light of known circumstances.

107.    As a direct and proximate result of FSD's deliberate indifference, Doe was subjected to an ongoing hostile educational environment.

108.    The hostile environment that Doe experienced was so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits, her grades suffered substantially and she was ultimately forced to leave FSD.

109.    In addition, Doe has suffered physical harm, considerable anxiety, and emotional distress as a result of the school's indifference.

110.    Doe has suffered these and other damages as a result of FSD's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as set forth above.

**Third Claim for Relief**
**Violation of Title IX (20 U.S.C. § 1681(a))**
**Retaliation**
**(Defendant FSD)**

111.   Doe re-alleges each and every allegation set forth in paragraphs 1 through 109 as though fully set forth herein.

112.   Doe was engaging in a federally protected activity when she reported Mr. Bashor for sexual assault and sexual harassment.  *See Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1224 (9th Cir. 2012).

113.   FSD and Superintendent Cline's attack on Doe's credibility, and release of her federally protected student records to the *Missoulian*, were adverse actions that intentionally subjected Doe to additional harassment, threats and discrimination.

114.   FSD and Superintendent Cline's actions were taken in direct response to Doe's federally protected reporting of Mr. Bashor to the school and the police for sexual assault and sexual harassment, and constituted acts of retaliation under Title IX.

115.   Doe has suffered damages as a result of FSD and Superintendent Cline's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as set forth above.

**FOURTH CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983 – Equal Protection**
**(Defendant Superintendent Cline)**

116.   Doe re-alleges each and every allegation set forth in paragraphs 1 through 114 as though fully set forth herein.

117.   Based upon reports made to Cline, Defendant Superintendent Cline actually knew of Mr. Bashor's sexual harassment and sexual assault of students at Frenchtown High School.

118.   Defendant Superintendent Cline had supervisory authority and control over Mr.

Bashor's behavior.

119.    Nonetheless, Defendant Superintendent Cline acquiesced in Mr. Bashor's sexual misconduct by refusing to respond reasonably to it, by investigating and redressing that conduct, or by reporting it to the appropriate authorities as required by Montana law.

120.    Federal Title IX law and Montana's mandatory reporting statute were clearly established at the time of Defendants' actions and failures to act such that a reasonable official in Defendants' position would have understood that her or his conduct implicated Doe's constitutional rights.  *Oona R.-S.- by Kate S. v. McCaffrey*, 143 F.3d 473, 476 (9th Cir. 1998).

121.    Doe has suffered significant damages as a result of these violations of 42 U.S.C. 1983, as set forth above.

## PRAYER FOR RELIEF

On her claim for relief, Plaintiffs seek the following:

A.      An award of damages to be determined at trial, including, without limitation, reimbursement and prepayment for all of Plaintiffs' expenses incurred as a consequence of the assaults; damages for deprivation of equal access to the educational benefits and opportunities provided by FSD, damages for past, present and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present and future enjoyment of life in an amount to be determined by the jury;

B.      An award of punitive damages under 42 U.S.C. § 1983 with respect to Defendant Superintendent Cline;

C.      Statutory and mandatory interest on all sums awarded;

D.      An award of costs and attorney fees (pursuant to 42 U.S.C. § 1988(b)); and

E.      Any other relief as is proper.

**PLAINTIFFS DEMAND A JURY TRIAL OF ALL ISSUES SO TRIABLE**

Dated:  April 12, 2018.

Respectfully submitted,


HUTCHINSON BLACK AND COOK, LLC

_/s/ John C. Clune_____
John C. Clune
**HUTCHINSON BLACK AND COOK, LLC**
921 Walnut Street, Suite 200
Boulder, CO 80302
Telephone: (303) 442-6514
Email: clune@hbcboulder.com


MELOY LAW FIRM


_____s_Mike Meloy_____
Mike Meloy
**MELOY LAW FIRM**
80 S. Warren Street
Helena, MT 59601
Telephone:     (406) 442-8670
Email: mike@meloylawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2018 I electronically filed the foregoing with the Clerk of Court for the Federal District Court of Montana, Missoula Division, by CM/ECF.

I certify that all participants in this case are registered CM/ECF users, who receive service electronically through the CM/ECF system:

Kaleva Law Offices
Elizabeth A. Kaleva
Kevin Twidwell
P.O. Box 9312
Missoula, MT 59807
*Attorney for Defendant District*

Elizabeth O'Halloran
Kaleva Law Offices
P.O. Box 9312
Missoula, MT 59807
*Additional Attorney for Defendant Cline*

 /s/ John C. Clune
John C. Clune